# STATE OF MICHIGAN

# COURT OF APPEALS

---

CIERRA KURT, DAVONNA FLUKER and
REGINALD SMITH,

        Plaintiffs-Appellees,

v

HOME-OWNERS INSURANCE COMPANY,

        Defendant-Appellant,

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant-Appellee,

and

LINWOOD BYNES, JR.,

        Defendant.

UNPUBLISHED
December 23, 2014

No. 317565
Wayne Circuit Court
LC No. 12-008609-NI

---

EBONY ABRAMS,

        Plaintiff,

and

HENRY FORD HEALTH SYSTEMS d/b/a
HENRY FORD HOSPITAL,

        Intervening Plaintiff,

v

HOME-OWNERS INSURANCE COMPANY,

        Defendant-Appellant,

No. 317580
Wayne Circuit Court
LC No. 12-011666-NF

-1-

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

         Defendant-Appellee.

Before: O'CONNELL, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

        In these consolidated cases, defendant Home-Owners Insurance Company (Home Owners) appeals by leave granted a July 2, 2013 circuit court order granting summary disposition in favor of defendant State Farm Mutual Automobile Insurance Company (State Farm) and declaring that Home-Owners has the highest level of priority for plaintiffs Cierra Kurt, Davonna Fluker, Reginald Smith and Ebony Abrams' (plaintiffs) no-fault personal protection insurance (PIP) benefits. For the reasons set forth in this opinion, we reverse.

## I. BACKGROUND

        The basic facts in these cases are undisputed. On February 19, 2012, plaintiffs were sitting in a disabled Ford Taurus owned by plaintiff Abrams smoking cigarettes and talking. The Taurus was backed into the driveway at Kurt's home. The Taurus was located there because that is where it stopped working about three months prior. Abrams testified at a deposition that she did not know why the vehicle was disabled. She tried to start it twice and nothing happened. Someone looked at the vehicle and advised her that the engine was "blown." Abrams explained that she planned to get the vehicle fixed at some point. The vehicle was otherwise intact with windows and all four tires. The Taurus was uninsured and none of the four plaintiffs had their own insurance or lived with a spouse or relative who were insured. At about 5:00 p.m. that day, a vehicle driven by defendant Linwood Bynes collided with the Taurus. Bynes' vehicle was insured by Home-Owners.

        Because plaintiffs did not qualify under any of their own no-fault insurance plans, State Farm was assigned as the claims carrier for plaintiffs. MCL 500.3172(1) sets forth the circumstances under which an injured person may receive assigned-claim benefits in relevant part as follows:

        A person entitled to claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle in this state may obtain personal protection insurance benefits through the assigned claims plan if no personal protection insurance is applicable to the injury [or] no personal protection insurance applicable to the injury can be identified. . . .

        In separate actions, plaintiffs brought claims against State Farm and Home-Owners and the circuit court consolidated the cases. The issue in the circuit court became which insurer was the first in priority. As the appointed claims carrier, absent some other intervening provision, State Farm would be first in priority under MCL 500.3114(4), which provides as follows:

(4) [A] person suffering accidental bodily injury arising from a motor vehicle accident *while an occupant of a motor vehicle* shall claim personal protection insurance benefits from insurers in the following order of priority:

    (a) The insurer of the owner or registrant of the vehicle occupied.

    (b) The insurer of the operator of the vehicle occupied. [Emphasis added.]

In its motion for summary disposition, State Farm argued that plaintiffs were not occupants of a motor vehicle because they were not occupying the vehicle "as a motor vehicle." Instead, State Farm argued, plaintiffs were akin to pedestrians and Home-Owners had priority pursuant to MCL 500.3115(1) which provides in relevant part as follows:

(1) [A] person suffering accidental bodily injury *while not an occupant of a motor vehicle* shall claim personal protection insurance benefits from insurers in the following order of priority:

    (a) Insurers of owners or registrants of motor vehicles involved in the accident.

    (b) Insurers of operators of motor vehicles involved in the accident. [Emphasis added.]

State Farm argued that MCL 500.3114(4) did not apply because plaintiffs did not suffer injuries "arising from a motor vehicle accident while an occupant of a motor vehicle." It focused on the reference to "motor vehicle accident" in the statutory text and noted that the no-fault act defines "motor vehicle accident" as a "loss involving the ownership, operation, maintenance, *or use of a motor vehicle as a motor vehicle*. . . ." MCL 500.3101(2)(f) (emphasis added). State Farm argued that MCL 500.3114(4) requires that the injured person's occupancy of a vehicle be related to the vehicle's use as a motor vehicle. It reasoned that because a vehicle's use as a motor vehicle involves a transportational function, MCL 500.3114(4) does not apply here because Abrams' car was not operational at the time of the accident. State Farm argued that because plaintiffs were not occupants of a motor vehicle used as a motor vehicle at the time of the accident, they must seek benefits pursuant to MCL 500.3115. Under that provision, Home-Owners, as the insurer of Bynes' vehicle, had priority.

Home-Owners disagreed with State Farm. It focused on the references to occupancy of a "motor vehicle" in MCL 500.3114(4), and argued that whether the vehicle was being used for a transportational function was irrelevant to the determination of which statute applied and which insurer had priority. Home-Owners noted that the no-fault act defines "motor vehicle" as a vehicle "operated or designed for operation upon a public highway", see MCL 500.3101(2)(e), and does not include a transportational function component. Home-Owners argued that State Farm had priority under the plain language of MCL 500.3114(4) because plaintiffs were injured while occupants of a motor vehicle.

Following a hearing, the circuit court agreed with State Farm that,

-3-

[the] transactional test should be used throughout the No-Fault Act, especially under circumstances like this where we have a motor vehicle that is not really a motor vehicle, it's just the citus [sic] of the accident and therefore I think . . . [plaintiffs] are non-occupants . . . .

In a July 2, 2013, written order, the court granted State Farm's motion for summary disposition and ordered that Home-Owners had priority. This Court granted Home-Owners' application for leave to appeal and consolidated the cases on January 21, 2014.[1]

## II. ANALYSIS

We review a trial court's ruling on a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The trial court granted State Farm's motion pursuant to MCR 2.116(C)(10). Summary disposition is proper under MCR 2.116(C)(10) when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." This case requires that we construe the relevant portions of the no-fault act; issues of statutory construction involve questions of law that we review de novo. *Cuddington v United Health Servs, Inc.*, 298 Mich App 264, 271; 826 NW2d 519 (2012). Statutory construction requires a determination of the Legislature's intent by first looking to the plain language of the statute. *Tienda v Integon Nat'l Ins Co*, 300 Mich App 605, 612; 834 NW2d 908 (2013). If the statutory language is unambiguous, it clearly expresses the Legislature's intent and is not subject to judicial construction. *Id*.

The issue before this Court involves which of the insurance companies has priority. State Farm has priority if plaintiffs qualify for benefits under MCL 500.3114(4). As noted, MCL 500.3114(4) applies to persons "suffering accidental bodily injury arising from a motor vehicle accident *while an occupant of a motor vehicle*. . ." (emphasis added). Thus, the statute applies if (1) plaintiffs were "occupants" of a "motor vehicle" at the time they were injured and (2) plaintiffs were injured in a "motor vehicle accident."

The no-fault act defines "motor vehicle" in relevant part as follows:

"Motor vehicle" means a vehicle, including a trailer, operated *or designed for operation* upon a public highway by power other than muscular power which has more than 2 wheels. Motor vehicle does not include a motorcycle or a moped . . . Motor vehicle does not include a farm tractor or other implement of husbandry which is not subject to the registration requirements of the Michigan vehicle code . . . . Motor vehicle does not include an ORV. [MCL 500.3101(2)(e) (emphasis added).]

---

[1] *Kurt v Home-Owners Ins Co*, unpublished order of the Court of Appeals, entered January 21, 2014 (Docket No. 317565); *Abrams v Home-Owners Ins Co*, unpublished order of the Court of Appeals, entered January 21, 2014 (Docket No. 317580).

The language of this statutory provision is plain and unambiguous. Although the Taurus would not start at the time of the accident, it was clearly a vehicle "designed for operation" upon a public highway. The vehicle was not altered; it had all four tires, the windows were intact and Abrams testified that she planned to have the vehicle repaired. The Taurus was clearly a "motor vehicle" as that term is defined in MCL 500.3101(2)(e). There is no "transportational function" component in the plain language of the statute and to the extent the circuit court read that component into the text of the statute, it erred in doing so.

Additionally, plaintiffs were seated in the Taurus at the time of the accident. Thus, they were "occupants" of the Taurus. *Random House Webster's College Dictionary* (1997) defines "occupant" in relevant part as "a person or group that occupies or has quarters or space in or on something . . . ." Here, plaintiffs were seated inside the Taurus. They clearly were occupying the Taurus, a motor vehicle, at the time of the accident and there is no dispute that they suffered injuries while occupying the Taurus.

State Farm argues that plaintiffs were not "occupants" of the Taurus because they were not occupying the vehicle "as a motor vehicle." State Farm argues that the term "occupant" in MCL 500.3114(4) should be interpreted in the same manner as the term "occupying" is interpreted in MCL 500.3106(1)(c), the parked vehicle exception,[2] which provides in relevant part as follows:

> (1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, *or use of a parked vehicle as a motor vehicle* unless any of the following occur:
>
> (a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.
>
> (b) Except as provided in subsection (2), the injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process.
>
> (c) [] *[T]he injury was sustained by a person while occupying, entering into, or alighting from the vehicle.* [Emphasis added.]

In *Putkamer v Transamerica Ins Corp*, 454 Mich 626, 628; 563 NW2d 683 (1997), the plaintiff slipped and fell on ice when she was entering her parked vehicle. The plaintiff claimed that she was entitled to PIP benefits under 3106(1)(c) because she was "entering into" her parked vehicle. *Id*. at 634. Our Supreme Court explained that "in order for [3106(1)(c)] to apply, an injury that occurs while someone occupies, enters, or alights from the vehicle must be 'directly

---

[2] The parties do not argue that the parked vehicle exception applies in this case to remove plaintiffs' claims from within the ambit of the no-fault act. The sole issue before this Court is which insurer has priority.

related' to the vehicle's character as a motor vehicle." *Id*. The Court stated that, "[t]he underlying policy of the parked motor vehicle exclusion of subsection 3106(1) is to ensure that an injury that is covered by the no-fault act involves use of the parked motor vehicle as a motor vehicle." *Id*. at 633. Therefore, the Court concluded, "where an injury occurs that is related to a parked motor vehicle, subsection 3106(1) requires that there be a sufficiently close nexus between the injury and the use of the vehicle as a motor vehicle to justify recovery." *Id*. at 634.

State Farm contends that the *Putkamer* controls in this case and that in order to be an "occupant" of a motor vehicle under MCL 500.3114(4), the occupancy must be sufficiently related to the use of the vehicle "as a motor vehicle." However, 3106 and 3114 are distinct. MCL 500.3106 expressly includes the requirement that a parked vehicle be used "as a motor vehicle" in order for the exception to apply. MCL 500.3114 does not contain that language. MCL 500.3114(4) plainly applies to persons who suffer accidental bodily injuries "arising from a motor vehicle accident" "while an occupant of a motor vehicle." As explained above, plaintiffs were occupants of the Taurus, a motor vehicle, at the time they sustained their injuries.

Moreover, like the plaintiff in *Putkamer*, here plaintiffs' injuries arose from the use and operation of a motor vehicle as a motor vehicle. MCL 500.3114(4) requires that the occupant's injuries arise from a "motor vehicle accident." The no-fault act defines "motor vehicle accident" in relevant part to include a "loss involving the ownership, operation, maintenance, *or use of a motor vehicle as a motor vehicle*. . . ." MCL 500.3101(2)(f) (emphasis added). Here, there is no dispute that Bynes' used and operated his motor vehicle as a motor vehicle or that such use and operation gave rise to the loss and injuries in this case. Thus, the "use of a motor vehicle as a motor vehicle" requirement was satisfied for purposes of MCL 500.3114(4) in that plaintiffs' injuries arose from a motor vehicle accident.

In sum, plaintiffs suffered accidental bodily injuries while they were occupants of a motor vehicle and their injuries arose from a motor vehicle accident. Accordingly, PIP benefits are governed by MCL 500.3114(4) and State Farm, as the appointed claims carrier, has priority over Home-Owners. The circuit court erred in concluding otherwise and in granting summary disposition in favor of State Farm.

Reversed. No costs awarded. MCR 7.219(A). We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher